1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

11

SOUTHERN DISTRICT OF CALIFORNIA

12
13

| | |
|---|---|
| 14 LAWRENCE ANTHONY PAUL, JR., | Civil 12-CV-02046-AJB-BGS No. |
| 15 Plaintiff, | |
| 16 | **REPORT AND RECOMMENDATION** |
| 17 v. | **TO DENY PLAINTIFF'S MOTION** **FOR SUMMARY JUDGMENT AND** |
| 18 CAROLYN W. COLVIN, Acting | **GRANT DEFENDANT'S CROSS-** **MOTION FOR SUMMARY** |
| 19 Commissioner of Social Security, | **JUDGMENT** |
| 20 Defendant. | |

21
22

## I. INTRODUCTION

23
24

On August 20, 2012, Lawrence Paul ("Plaintiff") filed a complaint pursuant to the Social

25

Security Act ("Act"), 42 U.S.C. section 405(g), challenging the Commissioner of the Social

26
27

Security Administration's ("Commissioner") denial of disability benefits. (Doc. No. 1.) On

28

November 5, 2012, the Commissioner filed an answer. (Doc. No. 10.) On March 7, 2013,

12-CV-02046-AJB-BGS

Plaintiff filed a motion for summary judgment, requesting reversal of the Administrative Law Judge's ("ALJ") final decision. (Doc. No. 17.) Plaintiff seeks reversal on the basis that the ALJ failed to: (1) properly consider Plaintiff's treating physician's opinions; (2) properly consider the Plaintiff's testimony; (3) properly support his finding that the Plaintiff can return to his work as a jewelry store owner; and (4) properly consider the testimony of a vocational expert.[1] (See Doc. No. 22.) On April 9, 2013, the Commissioner filed an opposition and cross-motion for summary judgment, claiming that Plaintiff failed to challenge any aspect of the ALJ's decision, and therefore waives all of the claims he may bring. (Doc. No. 18, 19.) On May 24, 2013, Plaintiff filed a response to Defendant's motion for summary judgment and raised the arguments presented above. (*See* Doc. No. 22.)  On May 30, 2013, Defendant filed a response to Plaintiff's response to Defendant's motion for summary judgment reiterating that Plaintiff failed to present any legal challenges in his opening brief. (*See* Doc. No. 23.) For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's motion for summary judgment be **GRANTED.**

## II. FACTUAL BACKGROUND

On March 22, 2007, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 6, 2006.[2] (AR 22.) Plaintiff's claim was denied initially on May 24, 2007, and upon reconsideration on

---

[1]It should be noted that the Plaintiff failed to raise any cognizable arguments in his opening brief of his motion for summary judgment. The arguments presented were first raised in Plaintiff's response. The Court, however, based on the reasoning below, will consider Plaintiff's arguments raised in his response.

[2]In his application for Social Security disability benefits, Plaintiff does not specify what his disabling condition is. However, based on the motions currently before the Court, and the Administrative Record on file, it appears that Plaintiff claims he suffers, and has suffered, from severe, debilitating, headaches for over 15 years. (*See* Doc. No. 17-1 at 1.)

12-CV-02046-AJB-BGS

September 14, 2007. (*Id.*) Thereafter, Plaintiff filed a written request for hearing on September 20, 2007. (*Id.*) Plaintiff appeared and testified at a hearing held on May 28, 2010, before ALJ Carletti, represented by his attorney, Michael T. Keating. (*Id.*) Also appearing and testifying were Gerald F. Winkler, M.D., an impartial medical expert, and Gloria J. Lasoff, an impartial vocational expert. (*Id.*)

**A.    Relevant Medical Evidence**

The record reviewed by the ALJ at the hearing and before this Court contains medical examination records dating back to 1999, shortly after the motor vehicle accident that Plaintiff alleges caused the onset of his daily headaches. (AR 409.) On January 6, 1999, Dr. John Ford conducted an MRI and found that Plaintiff's brain was normal with no focal lesions, no evidence for hemorrhages, and no appreciation. (AR 408.) The record also contains medical examinations conducted by Dr. Sandoz from January 31, 2005 until May 5, 2009. (AR 415-424, 322-336.) Dr. Sandoz's examinations reflect that Plaintiff has been neurologically intact with normal cranial nerves and 5/5 extremity strength. (*Id.*) Besides a drop in weight to 150 pounds on February 15, 2008, Plaintiff's recorded weight hovered around 173 to 183 pounds, with at most an eight-pound difference in a span of one and a half months. (*Id.*) Plaintiff always appeared to be well groomed and in moderate distress. (*Id.*) In particular, on March 10, 2006, Dr. Sandoz reported that a medication he previously prescribed reduced approximately 50–75% of the headaches Plaintiff suffered from. (AR 325.) Additionally, on February 15, 2008, Dr. Sandoz recorded that Plaintiff "has been doing well" after being prescribed medication. (AR 416.)

On June 22, 2009, Dr. Isaac Bakst conducted a neurological evaluation on Plaintiff and found that his headaches required Plaintiff to lie down every other day. (AR 426.) Dr. Bakst

found that Plaintiff had full power of his motor systems and was responsive to clinical examinations. (*Id.*) His assessment states that the examination is relatively unremarkable, and that he suspects that the headaches may be due to rebound from Imitrex and ibuprofen. (*Id.*)

**B.     Hearing Testimony**

**1.     Plaintiff's Testimony**

The administrative hearing was held on May 28, 2010. (AR 22.) At the hearing, Plaintiff testified to his work capabilities and the symptoms of his condition. (AR 47-51.) He stated that he used to work as a bar tender after graduating college and owned a jewelry store from 1995 to 2006. (AR 46.) The business closed in 2006 for financial reasons. (AR 45.) Plaintiff also testified that his cluster headaches require him to lie down in a dark room for a few hours about three times everyday, which hinders his work ability and active lifestyle. (AR 47, 50, 51, 54.) He listed the medications that he had tried, his current medications (Imitrex, ibuprofen, and Pamelor), the dosages, and the side effects of depression and stomach problems. (AR 48, 56-57.) Lastly, Plaintiff claimed that he had seen Dr. Sandoz for five years and saw Dr. Bakst only once before. (AR 54-55.)

**2.     Medical Expert's Testimony**

After Plaintiff's testimony, the medical expert questioned Plaintiff and gave his opinion on what caused the Plaintiff's headaches. (AR 58.) He stated that a complicating factor existed, citing to Dr. Bakst's hypothesis that the medication causes rebound headaches. (*Id.*) He explained that the body develops a dependence on abortive medication, such as the kind Plaintiff takes daily, that causes a withdrawal reaction in the form of headaches when taken for longer than ten days in a month. (AR 59.) Although he found Plaintiff's symptom testimony consistent

with chronic daily headaches, he did not draw any conclusions as to Plaintiff's functional

capacity but suspected that a combination of the migraine and withdrawal headaches caused the

pain. (*Id*.) Additionally, he stated that cluster headaches are different from regular migraines as

they are severe but brief, last only an hour or two, and occur for a few weeks but may go away

for a few weeks or months at a time. (AR 62.)

### 3.   Vocational Expert's Testimony

Lastly, the vocational expert, Gloria Lasoff testified that Plaintiff's former employment

skills do not transfer to any sedentary position employment. (AR 63.) Further, when presented

with a hypothetical situation of an individual who has to miss work four or more days a week

due to headaches, or who has to lie down three times a day in a dark and quiet place, she

responded that the individual would not be able to do Plaintiff's past work. (AR 64.) She also

stated that no other position existed for an individual with those limitations. (AR 65.)

## C.   ALJ's Findings

On June 29, 2010, the ALJ issued his decision denying benefits to Plaintiff. (AR 27.) In

arriving at his decision, the ALJ evaluated Plaintiff using the five-step sequential evaluation

process set forth in the Commissioner's regulations, 20 C.F.R. section 416.920(a), and described

below. The ALJ found that the Plaintiff had not engaged in substantial gainful activity during the

period from his alleged onset date of August 6, 2006 through his date last insured of December

31, 2009. (AR 24.) Accordingly, the ALJ found that Plaintiff satisfied step one. (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairment: chronic

headaches. (*Id.*) In support of this finding, the ALJ noted that "[t]he record documents that the

claimant has chronic headaches." (*Id.*) Additionally, MRI of Plaintiff's brain has been normal

and Plaintiff is being treated with medications including Imitrix, Cymbalta, Tramadol, and ibuprofen. (*Id.*) Accordingly, the ALJ found that Plaintiff's impairment was severe, and therefore, the ALJ found that Plaintiff satisfied step two and moved on to step three. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) In support of this finding, the ALJ noted that "no physician has opined that the claimant's condition meets or equals any listing, and the state agency program physicians opined that it does not. (*Id.*) The ALJ, therefore, proceeded to step four.

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a jewelry store owner. (AR 25-26.) In reaching his conclusion, the ALJ considered Plaintiff's testimony from the hearing regarding his reasons for leaving his job, the objective evidence from medical examinations and MRI scans, and the type of treatment and accommodations provided for Plaintiff due to the condition. (AR 25.) The ALJ also considered Dr. Sandoz's examination records and found inconsistent statements made about Plaintiff's symptoms, as well as a lack of supporting physical evidence. (AR 26.) Furthermore, the ALJ considered Plaintiff's claims of nausea and severe pain, and the medical expert's testimony affirming Dr. Bakst's suggestion of withdrawal headache symptoms. (AR 26.) In light of these facts, the ALJ found at step four that Plaintiff was not disabled as defined in the Social Security Act and could return to his old job as a jewelry store owner. (AR 27.) Because the ALJ found at

step four that Plaintiff is capable of doing work he performed in the past, his analysis was complete and it was not necessary to evaluate Plaintiff under step five.**³**

### III. STANDARD OF REVIEW

To qualify for disability benefits under the Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that she previously performed or any other substantially gainful employment that exists in the national economy. 42 U.S.C.A. § 423(d)(1)(A), (2)(A).

**A.     Sequential Evaluation of Impairments**

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently engaging in any substantial gainful activity. If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is severe. If not, the claimant is not disabled. If so, the evaluation proceeds to step three. (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments ("listings"). If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether the claimant is able to do any work she has done in the past. If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520, 404.1509; *see also Tackett*

---

³ If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. *See* 20 C.F.R. § 404.1520.

*v. Apfel,* 180 F.3d 1094, 1098–99 (9th Cir. 1999). The claimant bears the initial burden of proving disability in steps one through four of the analysis. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989)). If a claimant establishes an inability to carry on past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Id.*

**B.    Judicial Review**

A claimant may seek judicial review of an unfavorable decision of the Commissioner. The district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

The district court may enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

**IV. DISCUSSION**

12-CV-02046-AJB-BGS

**A.      Plaintiff's Arguments Not Raised In His Opening Brief Can Be Considered By The Court**

Defendant argues in her cross-motion for summary judgment and response in opposition that Plaintiff failed to challenge any aspect of the ALJ's decision in his motion for summary judgment, and therefore, Plaintiff's motion for summary judgment should be denied and Defendant's cross-motion for summary judgment should be granted. (Doc. No. 18-1 at 3; Doc. No. 19-1 at 3.) In his reply to Defendant's opposition and opposition to Defendant's cross-motion for summary judgment, Plaintiff, for the first time, raises his arguments challenging the ALJ's decision. (*See* Doc. No. 22.) In her reply, Defendant argues that Plaintiff waived all arguments challenging the ALJ's decision by not raising them in his opening brief. (Doc. No. 23 at 3.) For the following reasons, the Court finds that although Plaintiff failed to raise any proper challenges to the ALJ's decision in his opening brief, the Court may still consider the arguments presented in Plaintiff's response.

The Ninth Circuit clearly states that the ordinary approach in reviewing appeals excludes consideration of new claims not mentioned in the opening brief but presented instead in a reply brief. *Eberle v. City of Abraham*, 901 F.2d 814, 818 (9th Cir. 1990) (quoting *Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988)); Fed.R.App.P. 28(a)(4). However, exceptions exist to override the default approach. *U.S. v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).  Courts are given discretion to review such claims in cases of good cause, unjust results, claims raised in the appellee's brief, or lack of prejudice to the opposing party's defense. *Id*.

In this case, Plaintiff has failed to present any legal or factual claims in his initial motion for summary judgment, merely stating that he meets the criteria to qualify for disability benefits. (*See* Doc. No. 17.) After Defendant illuminated Plaintiff's failure to raise specific contentions, Plaintiff presented three grounds for relief in his response to Defendant's motion for summary judgment. (*See* Doc. No. 22.) Here, Defendant will not be unfairly prejudiced by Plaintiff's failure to raise his arguments in his opening brief because Defendant was given the opportunity to respond to Plaintiff's newly raised arguments in her reply. (*See* Doc. No. 23.) On the other hand, Plaintiff would be deeply prejudiced, and the result would be unjust if Plaintiff's newly raised arguments were not considered at this stage. Therefore, the Court finds good cause to review those arguments presented in Plaintiff's response and evaluates them below accordingly.

**B.     The ALJ Properly Disregarded the Opinion of Plaintiff's Treating Physician**

Plaintiff contends that the ALJ failed to provide specific, legitimate reasons for rejecting the opinion of Plaintiff's treating physician and therefore erred in dismissing the treating physician's opinion. (Doc. No. 22 at 1, 5.) Defendant does not argue the merits of this issue and instead claims that Plaintiff waived this argument by not presenting it in his opening brief. (Doc. No. 23 at 2.)

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* C.F.R. § 404.1527(d) (prescribing the respective weights to be given the opinion of treating sources and examining

sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830 (citation omitted); *see also Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an uncontroverted opinion of a treating physician only for clear and convincing reasons." (citation omitted)). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted).

In rejecting Dr. Sandoz's opinion, the ALJ gave the following reasons: (1) Dr. Sandoz's functional assessment was not supported by the MRI scan of the brain that was normal; (2) Dr. Sandoz's opinion is not substantiated by his own clinical findings that reveal that the Plaintiff has been neurologically intact with normal cranial nerves; (3) Dr. Sandoz's opinion is inconsistent with his report that the medication InnoPran XL had "reduced about 50-75% of the headaches" with no side effects; (4) Dr. Sandoz's opinion is inconsistent with the findings and opinions of consulting neurologist Isaac Bakst, M.S., who thoroughly evaluated Plaintiff on June

22, 2009; and (5) Dr. Sandoz's opinion is also inconsistent with the findings of the medical expert who noted that Plaintiff's headaches were very severe but brief and lasted one or two hours. (AR 26.)

Here, the ALJ properly disregarded the contradicted opinion of Dr. Sandoz, and gave specific and legitimate reasons supported by substantial evidence in the record for doing so. Dr. Sandoz concluded that Plaintiff is not able to obtain any gainful or low-stress employment because he is likely to miss work at least four times a week. (AR 431-32; *see* AR 364.) However, on March 10, 2006, Dr. Sandoz found that Plaintiff's headaches decreased by 50-75% after taking InnoPran XL, contrary to his conclusion of complete disability. (AR 325.) Dr. Sandoz's records from routine examinations from 2005 to 2009 also show that Plaintiff was neurologically intact with normal cranial nerves, which does not support a finding that Plaintiff is unable to work. (AR 363, 415, 429-35, 323-33.) Dr. Sandoz failed to provide any support from his own clinical findings that affirm the intensity of the headaches and instead, based his conclusions on Plaintiff's own complaints. (*Id.*) As stated in *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), the ALJ may choose to dismiss conclusory opinions inadequately supported by clinical findings at its discretion. Here, Dr. Sandoz's opinion is not supported by his clinical findings and the ALJ properly disregarded it for those reasons.

Furthermore, the ALJ correctly dismissed Dr. Sandoz's opinion because it conflicts with opinions given by Dr. Bakst, Plaintiff's examining physician, and the medical expert who testified at the hearing. Contrary opinions of a medical expert, if consistent with other evidence in the record, may be considered substantial evidence in support of dismissing a treating physician's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). First, Plaintiff's

12-CV-02046-AJB-BGS

consulting neurologist, Dr. Bakst, found that the headaches may be caused in part by the medication prescribed by the treating physician and could be alleviated by altering the prescriptions. (AR 427.) Dr. Bakst's opinion implies that a chance of partial recovery exists and undermines Dr. Sandoz's conclusion that Plaintiff is permanently disabled and cannot return to work. (*Id.*) Second, the medical expert stated at the hearing that Plaintiff's headaches were severe but only lasted for one or two hours at a time, with weeks or months in between each series of episodes. (AR 62.) Contrarily, Dr. Sandoz stated that the severe daily headaches incapacitate him for at least 25% of the day, which impairs him from sustaining work activities on a regular schedule. (Doc. No. 22 at 18-19.) The medical expert also observed that Plaintiff's condition was complicated by the medication he was taking. (AR 59.) The opinion of Dr. Bakst and the medical expert are consistent with evidence in the record (which includes Dr. Sandoz's own clinical findings). Therefore, the ALJ properly disregarded Dr. Sandoz's opinion for these reasons.

For the above reasons, the ALJ did not err in rejecting the Dr. Sandoz's opinion because he provided specific and legitimate reasons supported by substantial evidence in the record for doing so. The ALJ specifically identified the inconsistencies in the treating physician's opinion and provided a summary of facts explaining the conflicting clinical evidence. (AR 26.) Additionally, the ALJ pointed out contradictory opinions of Dr. Bakst and the medical expert which were consistent with evidence in the record. Thus, the ALJ properly disregarded Dr. Sandoz's testimony

///

///

12-CV-02046-AJB-BGS

**C.      The ALJ Properly Discredited Plaintiff's Credibility**

After the claimant establishes a medical impairment that likely causes the pain

complained of, the ALJ must consider the claimant's credibility to determine if the severity of

the pain is valid even though it is based on the claimant's subjective experience. *Bunnell v.*

*Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). In determining the credibility of a claimant's

allegations of disabling pain, the ALJ is required to consider a number of factors, these include:

(1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2)

precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3)

type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other

than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily

activities. *Id.* at 346 (citing Social Security Regulation (SSR) 88–13). The ALJ may also

consider any prior inconsistent statements, failure to seek treatment, and daily activities in his

evaluation. *Bunnell*, 947 F.2d at 346.

Furthermore, if the ALJ finds the claimant not credible without any evidence of

malingering, he must make specific statements identifying which claims are not credible, along

with evidence to support them. *Dodrill v. Shalala*, 12 F.3d 915, 917 (9th Cir. 1993). Merely

stating that the claimant seems to be experiencing more pain than normally expected is not

sufficient to discount the claimant's testimony. *Swenson v. Sullivan*, 976 F.2d 683 (9th Cir.

1989). Additionally, a claimant's testimony may not be dismissed for being unsubstantiated by

objective medical evidence alone. *Robbins v. Social Sec. Admin*, 466 F.3d 880, 883 (9th Cir.

2006).

In finding that Plaintiff's allegations were not credible to the extent they were inconsistent with the ALJ's opinion, the ALJ properly considered the relevant factors before making his decision. Prior to the ruling, the ALJ held a hearing to question Plaintiff about his condition and work abilities. (AR 42-66.) Plaintiff provided the ALJ with descriptions of the pain, stating that the "spasm cluster" headaches occurred everyday, varied in length, and required him to lie down. (AR 47.) Plaintiff also mentioned his sensitivities to light and sound, which are often aggravating factors when the headaches return. (*Id*.) Plaintiff addressed his past and current medications and side effects, and stated that Dr. Sandoz's treatment plan in prescribing the medication was for maintenance purposes. (AR 48, 56-57.) Lastly, he described the hobbies that he discontinued due to his condition, and his limitations at work when the headaches occur. (AR 50, 51, 54.)

After review, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged headaches, but disagreed with Plaintiff's credibility as to the severity and limiting effects of the symptoms. (AR 25.) In support of his decision, the ALJ made the following findings. First, the ALJ found that the record and objective evidence do not support Plaintiff's claims of the severity of the headaches. (*Id*.) The medical expert testified that cluster headaches are generally severe but brief, and may appear, then disappear for a few weeks at a time. (AR 62.) In contrast, Plaintiff claims that his headaches were ongoing and lasted for a few hours each time. (AR 50.) Furthermore, Dr. Sandoz's observation of Plaintiff being neurologically intact with normal cranial nerves and movements, the medical expert's agreement of normal objective evidence other than an unrelated skin disorder, and the normal MRI of the brain collectively do not support Plaintiff's symptoms. (AR 25.) Lastly, the ALJ found that the

record lacks evidence of special accommodations, weight loss, sleep deprivation from pain, or cognitive dysfunction for a more restrictive residual functional capacity. (AR 26.) Plaintiff disagrees with this finding and states in his brief that daily nausea causes weight loss. (Doc. No. 22). Dr. Sandoz's examining records, however, show that Plaintiff's weight has been consistent over the years. (AR 415-424, 322-336.).

Although the lack of support from objective medical evidence alone is not sufficient to dismiss the claimant's credibility, the ALJ also considered Plaintiff's inconsistent statements in his decision. (AR 25.) Specifically, Plaintiff's claim of the disability onset coincides with the date he closed his business. (*Id*.) Plaintiff alleged in his disability report that he had to close his business due to his disability (AR 198), but stated at the hearing that it was for financial reasons and not because of his inability to work. (AR 25.) Additionally, the ALJ noted that Plaintiff does not exhibit any loss of strength or difficulty moving that is indicative of severe pain, though he claims to be weak and fatigued due to his condition. (*Id*.) Indeed, the record reflects that Plaintiff's extremities were consistently 5/5 in strength. (AR 415-424, 322-336.)

As discussed above, the ALJ made specific reasons for finding Plaintiff's allegations not credible and supported them with evidence from the record. Plaintiff alleges that the ALJ impermissibly discounted his testimony without pointing to facts or opinions other than the medical expert's opinion. (Doc. No. 22 at 2.) The ALJ supported his decision, however, with evidence from both Dr. Sandoz's and Dr. Bakst's examinations, as well as Plaintiff's own statements at the hearing. Therefore, the ALJ did not err in his finding that Plaintiff's allegations were not credible.

**D.     The ALJ's Determination at Step Four that Plaintiff was Capable of Performing His Past Relevant Work as a Jewelry Store Owner was Supported by Substantial Evidence and Free of Legal Error**

Plaintiff contends that the ALJ erred in finding that Plaintiff can return to his work as a jewelry store owner. (Doc. No. 22 at 13.) In support of this contention, Plaintiff claims that he cannot withstand the minimal rigors of being able to work every day. (*Id.*) Additionally, Plaintiff claims that the residual functional capacity finding by the ALJ that Plaintiff can do "medium exertional work" was not supported by any evidence in the record. (*Id.*)

**1.     Pertinent Law**

At step four of the sequential evaluation process, the Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed. *Pinto v. Massanari*, 249 F.3d 840, 845 (2001). "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, [Social Security Ruling] 82-61, and the claimant's own testimony, [Social Security Ruling] 82-41." *Id.*

Although the claimant has the burden of proving an inability to perform his past relevant work, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* at 844. To determine whether a claimant has the residual functional capacity to perform his past relevant work, the ALJ must ascertain the demands of the claimant's former work and then compare the demands with his present capacity. *Villa v. Heckler*, 797 F.2d 794, 797-98 (9th Cir. 1986). In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact: (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and

mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to his past job or occupation. *Porto v. Colvin*, 2013 WL 1207464, *3 (C.D. Cal. 2013) (citing Social Security Ruling 82-62).

### 2.   Analysis

Plaintiff is challenging steps one and three of the analysis set forth in *Porto v. Colvin*, 2013 WL 1207464, *3 (C.D. Cal. 2013). (Doc. No. 22 at 13.) Specifically, Plaintiff is challenging the ALJ's finding that Plaintiff has the residual functional capacity to do medium exertional work, as well as the ALJ's finding that Plaintiff's residual functional capacity would permit a return to his past job or occupation. (*Id.*) The Court addresses each of Plaintiff's arguments in the context of the three-step analysis set forth in *Porto* v. Colvin, 2013 WL 1207464, *3 (C.D. Cal. 2013),  below.

### a.    The ALJ's Finding as to Plaintiff's Residual Functional Capacity

The ALJ found that Plaintiff "had the residual functional capacity to do medium exertional work."[4] (AR 25.) According to Plaintiff, "[t]here is no valid opinion testimony by any expert which would support [the ALJ's finding]. [The ALJ's finding] ignores all the documentary and opinion testimony presented. Not a single individual testified and not a single document was provided that would support this finding." (Doc. No. 22 at 13.) For the following reasons, the Court disagrees with Plaintiff's assessment of the record.

---

[4] Medium work requires lifting up to 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c). A job which requires the employee to stand and/or walk for virtually the entire day is medium work, even if it requires very little lifting. Social Security Ruling 83-10 (1983). Most medium work requires more than occasional stooping and bending. *Pinto*, 249 F.3d at 846. To do the full range of medium work requires the ability to perform "frequent bending-stooping." Social Security Ruling 83-10 (1983).

In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* Social Security Regulations 96-8, 1996 WL 374184, at *5; *accord* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Here, the ALJ has satisfied this requirement. In his decision, the ALJ begins by stating, "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [t]he undersigned has also considered opinion evidence . . . " As discussed above, the ALJ went on to properly discredit the Plaintiff's credibility regarding the severity of his symptoms and found that the Plaintiff's "allegations are not credible to establish a more restrictive residual functional capacity then that found" by the ALJ. (AR 25-26.) The ALJ also discussed the opinion evidence of treating physician Dr. Sandoz and consulting neurologist Dr. Bakst. (AR 26.) As discussed above, the ALJ properly disregarded the opinion evidence of Dr. Sandoz and supported his decision with medical evidence in the record, as well as with the opinions of Dr. Bakst and the medical expert who testified at the hearing. (*Id.*) Lastly, the ALJ noted that the "State Agency Doctors felt the [Plaintiff] was capable of substantial work activity." (*Id.*) A review of the record reveals that two medical consultants completed a residual functional capacity assessment of Plaintiff. (AR 337-44, 365-72.) Both medical consultants found that Plaintiff could lift 50 pounds occasionally, lift 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day, and push and/or pull for an unlimited duration (other than as shown for lift and/or carry). (AR 338, 366.) The medical consultants also found that Plaintiff had no

postural limitations, no manipulative limitations, no visual limitations, no communicative

limitations, and no environmental limitations. (AR 339-41, 367-369.) For these reasons, the

Court finds that the ALJ properly considered all of the evidence in the record in determining the

Plaintiff's residual functional capacity, and that the ALJ's finding is supported by substantial

evidence. Therefore, the Court will consider step two of the analysis, the ALJ's findings as to the

physical and mental demands of Plaintiff's past job. *See Porto*, 2013 WL 1207464, *3.

### b.   The ALJ's Findings as to the Physical and Mental Demands of Plaintiff's Past Job

As noted above, "Social Security Regulations name two sources of information that may

be used to define a claimant's past relevant work as actually performed: a properly completed

vocational report, [Social Security Ruling] 82-61, and the claimant's own testimony, [Social

Security Ruling] 82-41." *Pinto*, 249 F.3d at 845 (2001). Here, the ALJ based his findings of the

physical and mental demands of Plaintiff's former work as a jewelry store owner on Plaintiff's

own description of the work he performed. (AR 27.) In Plaintiff's work history report, he

indicates that he was a retail jewelry store owner from July, 1995 to August, 2006. (AR 205.)

According to Plaintiff, his position as a jewelry store owner involved the use of machines, tools,

or equipment, the use of technical knowledge or skills, and required writing and completion of

reports or similar duties. (*Id.*) Additionally, Plaintiff noted that he would be required to walk,

stand, sit, stoop, kneel, crouch, crawl, reach, and write, type or handle small objects a total of two

hours each day. (*Id.*) Plaintiff's job also required lifting and carrying small objects for short

distances. (*Id.*) The heaviest weight Plaintiff would lift was less than 10 pounds frequently. (*Id.*)

Plaintiff did not supervise other people at his job and was not a lead worker. (*Id.*) The Plaintiff's

testimony, which the ALJ adopted, was substantial evidence supporting the ALJ's findings of fact as to the physical and mental demands of Plaintiff's past work. Plaintiff does not challenge these findings. (*See* Doc. No. 22.)

### c.      The ALJ's Findings as to Plaintiff's Residual Functional Capacity to Return to His Past Job or Occupation

The ALJ found that the Plaintiff was capable of performing his past relevant work as a jewelry store owner. (AR 26.) In support of this finding, the ALJ stated that Plaintiff's work as a jewelry store owner "did not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." In comparing the Plaintiff's residual functional capacity with the physical and mental demands of Plaintiff's work as a jewelry store owner as performed and as he described, the ALJ found that Plaintiff was able to perform this work as actually performed. (AR 26-27.) Plaintiff generally contends that he cannot withstand the minimal rigors of being able to work every day, but does not provide any evidence to support this argument. (Doc. No. 22 at 13.)

For the reasons discussed above, substantial evidence supports the ALJ's determination that Plaintiff's residual functional capacity would permit a return to Plaintiff's past relevant job as a jewelry store owner. As the ALJ determined—and Plaintiff does not credibly dispute—the exertional and mental demands of Plaintiff's former job as a jewelry store owner do not exceed Plaintiff's exertional and mental capabilities. The ALJ properly found that Plaintiff had the residual functional capacity to do medium exertional work, which according to Social Security Regulations and Rulings, is work that requires lifting up to 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds, 20 C.F.R. sections 404.1567(c),

416.967(c), requires the employee to stand and/or walk for virtually the entire day, Social

Security Ruling 83-10 (1983), and requires the ability to perform "frequent bending-stooping,"

Social Security Ruling 83-10 (1983). According to Plaintiff's work history report of his past work

as a jewelry store owner, he was required to lift only small objects (less than 10 pounds) short

distances, and would walk, stand, sit, stoop, kneel, crouch, crawl, reach, and write type or handle

small objects for only two hours a day. (AR. 206.) Therefore, based on Plaintiff's residual

functional capacity to do medium exertional work and the physical and mental demands of his

past relevant work as a jewelry store owner as described by Plaintiff, the ALJ's finding that

Plaintiff could perform his past relevant work as a jewelry store owner is supported by substantial

evidence.

**E.     The ALJ Did Not Err in Failing to Properly Question a Vocational Expert at the Hearing**

Lastly, to the extent that Plaintiff argues that the vocational expert called at the hearing

was not properly questioned through a hypothetical posing all of Plaintiff's functional limitations,

both physical and mental, Plaintiff's argument lacks merit. (Doc. No. 22 at 16.) Since the ALJ

determined at step four that Plaintiff could perform his past relevant work, and therefore was not

disabled, the ALJ was not required to call a vocational expert. *See Crane v. Shalala*, 76 F.3d 251,

255 (9th Cir. 1996) (testimony from vocational expert not required where ALJ determines at step

four that claimant is able to perform past work); *Wade v. Astrue*, 2011 WL 4500863, *10 (E.D.

Cal. Sept. 27, 2011) ("[A]t step four an ALJ's determination that a claimant can perform past

work need not be supported by the testimony of a vocational expert." (citations omitted); *see also

Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.) ("At the most, the Commissioner need use a

vocational expert only if there is an absence of other reliable evidence of the claimant's ability to perform specific jobs."), *cert. denied*, 519 U.S. 881 (1996). Because the ALJ properly determined at step four that Plaintiff could return to his past relevant work as a jewelry store owner, the testimony of a vocational expert was not necessary. Therefore, the ALJ did not err by failing to question a vocational expert through a hypothetical posing all of Plaintiff's limitations because the ALJ was not required to call a vocational expert.

## V. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Cross-Motion for Summary Judgment be **GRANTED,** and the ALJ's decision be **AFFIRMED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. section 636 (b)(1).

**IT IS ORDERED** that no later than **October 1, 2013**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 8, 2013**.

**IT IS SO ORDERED**.

DATED: September 11, 2013

**Hon. Bernard G. Skomal**
U.S. Magistrate Judge
United States District Court